UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

SPERANZA ALESSANDRA,

    Plaintiff,

v.       Case No.  3:19-cv-2878-MCR/MJF

WILLIAM BARR, *et al.*,

    Defendants.
_____/

## **REPORT AND RECOMMENDATION**

Plaintiff seeks a writ of mandamus to compel the United States Department of State to grant her Egyptian husband a consular interview so that he may obtain a United States visa to enter the United States. Plaintiff moved for summary judgment (Doc. 14), Defendants responded (Doc. 17), and Plaintiff filed a reply. (Doc. 18). As discussed below, because genuine issues of material fact remain outstanding, Plaintiff's motion for summary judgment should be denied.[1]

### **I. Background**

On July 27, 2017, Plaintiff, a United States citizen, married Mr. Ayman Ibrahim Elbadrawy Abdelkader, a national of the Arab Republic of Egypt. To obtain

---

[1] This case was referred to the undersigned to address preliminary matters and to make recommendations regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.3; *see also* 28 U.S.C. § 636(b); Fed R. Civ. P. 72(b).

a visa for her husband to enter the United States, on February 5, 2018, Plaintiff filed a U.S. Citizenship and Immigration Services ("USCIS") Form I-130, Petition for Alien Relative. "For an individual to procure an immigrant visa as the spouse of a United States citizen, the spouse must first file the Form I-130 to establish his or her relationship with the individual seeking the visa." *United States v. Russell*, 957 F.3d 1249, 1251 n.2 (11th Cir. 2020) (citing 8 U.S.C. § 1154(a)(1)(A)(i)). "Generally, by filing an I-130 petition, 'any citizen of the United States' can request that the Attorney General recognize a foreign national family member, like a spouse or child, as an 'immediate relative.'" *Bourdon v. U.S. Dep't of Homeland Sec.*, 940 F.3d 537, 539-40 (11th Cir. 2019) (quoting 8 U.S.C. § 1154(a)(1)(A)(i)).

After USCIS approves an I-130, the Department of State—through the National Visa Center ("NVC")—processes I-130 petitions. The NVC is responsible for scheduling the beneficiary—here, Plaintiff's husband—to appear for an interview to execute the visa application. Before the NVC schedules a visa interview, however, an applicant must: (1) pay any fees; (2) complete an immigrant visa application; and (3) submit required financial and civil documents.

The required documents and fees are submitted to the NVC online through the Department of State's Consular Electronic Application Center ("CEAC"). (Doc. 14 at 7; Doc. 17-1 ¶ 2, 4). If required documents are missing or there are errors with the submission of these materials, the NVC notifies the applicant to resubmit the

documentation. (Doc. 14 at 5). Once a case becomes documentarily complete—that is, the fees have been paid and all documents have been properly submitted—the NVC schedules the beneficiary to appear at a U.S. embassy or consulate for an interview and to execute the visa application before a U.S. consular officer. (Doc. 17-1 at ¶ 5). The NVC generally schedules an interview with the consular officer within 30-60 days of the case becoming documentarily completed. (Doc. 14-3 at 2).

On August 1, 2018, the NVC emailed a welcome letter to Plaintiff. (Doc.14 at 10; Doc. 17-1 ¶¶ 2, 6). Plaintiff paid all of the required fees. (Doc. 14 at 7; Doc. 17-1 ¶ 6). On October 11, 2018, Plaintiff began submitting the required documents. (Doc. 14 at 10; Doc. 17-1 ¶ 7). Due to Plaintiff's errors with these submissions, the NVC notified Plaintiff six times between October 17, 2018, and January 7, 2019, that various documents needed to be resubmitted. (Doc. 17-1 ¶ 7).

Plaintiff contends that as of January 7, 2019, the CREAC website indicated that all required documents—including Plaintiff's marriage termination documents—had been received and were deemed "accepted." (Doc. 1-7 at 3).[2] Plaintiff asserts that, on January 23, 2019, the NVC sent Plaintiff an update which indicated that the visa application was in final review. This status update, however, was subsequently removed. (Doc. 1-6 at 2; Doc. 14-3 at 2).

---

[2] Plaintiff previously had been married.

Despite this electronic notification and the CREAC website indicating that Plaintiff's documents had been "accepted," the NVC did not schedule a consular interview. In order to facilitate the processing of the petition, Plaintiff's counsel sent several emails to NVC regarding the consular interview. (Doc. 14-8 at 2). On March 21, 2019, the NVC responded that Plaintiff's documents were "being reviewed. NVC will let you know if we need additional information or are able to schedule your case for an interview." (Doc. 14-8 at 1).

On April 10, 2019, Plaintiff again inquired about the consular interview. (Doc. 14-8 at 4-5). On April 22, 2019, the NVC responded:

> We sent a message to your account on 07-JAN-2019 at the online Consular Electronic Application Center (CEAC) . . . letting you know that some required documents are missing.
>
> Need Document – Please submit all marriage termination documents for Speranza. . . .
>
> You must upload the missing documents to CEAC before we can continue processing your immigration visa application.

(Doc. 14-8 at 3). Plaintiff's counsel asserts that his staff promptly uploaded the marriage termination documents. (Doc. 14-3 at 2).

In May 2019, Plaintiff's counsel sent two emails requesting a status update regarding the consular interview. (Doc. 14-8 at 8-10). On June 14, 2019, the NVC responded indicating that it had sent a message to Plaintiff which informed her that unidentified documents were missing from her application. The NVC indicated that

Plaintiff was required to upload these missing documents before the NVC could continue processing the visa application. (Doc. 14-8 at 7).

On July 31, 2019, Plaintiff initiated this civil action. (Doc. 1). On December 17, 2019, one day after Plaintiff filed the instant motion for summary judgment, the NVC informed Plaintiff that the NVC was "unable to accept these documents as uploaded." (Doc. 18-1 at 2). The NVC advised Plaintiff that these documents needed to be resubmitted. (Doc. 17-1 at 4; Doc. 18 at 2). On December 18, 2019, Plaintiff's counsel resubmitted the marriage termination documents to the NVC. (Doc. 18-1 at 2; Doc. 20 at 2).

On February 20, 2020, the NVC deemed the visa application to be "documentarily qualified." (Doc. 20-1). The NVC indicated that it would schedule the consular interview and inform Plaintiff and her husband of the date of the interview. (Doc. 20-1). Before the consular interview could be scheduled, on March 20, 2020, due to the COVID-19 pandemic, the Department of State suspended routine visa services at all U.S. Embassies and Consulates. (Doc. 20-2; Doc. 20-3). As a result, the U.S. Embassy in Egypt has cancelled routine Visa Appointments until approximately September 30, 2020.

## II. Standard

Rule 56 of the Federal Rules of Civil Procedure states that a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "genuine" dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004). An issue of fact is "material" if it could affect the outcome of the case. *Anderson*, 477 U.S. at 248; *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995).

When addressing a motion for summary judgment, a court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Hickson*, 357 F.3d at 1260 (quoting *Anderson*, 477 U.S. at 251-52). At "the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S at 249. In evaluating a summary judgment motion, all "justifiable inferences" must be resolved in the nonmoving party's favor so long as there is a genuine dispute as to those facts. *Beard v. Banks*, 548 U.S. 521, 529 (2006); *see Scott v. Harris*, 550 U.S. 372, 380 (2007).

### III. Discussion

Congress empowered courts to adjudicate mandamus actions in Section 1361 of Title 28, which states: "The district courts shall have original jurisdiction of any

action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361; *United States v. Davis*, 359 F. App'x 128, 129 (11th Cir. 2010); *Cash v. Barnhart*, 327 F.3d 1252, 1257 (11th Cir. 2003). Mandamus, however, is "'a drastic and extraordinary' remedy 'reserved for really extraordinary causes.'" *Cheney v. U.S. Dist. Court for D.C.*, 542 U.S. 367, 380 (2004) (quoting *Ex parte Fahey*, 332 U.S. 258, 259-60 (1947)); *Will v. United States*, 389 U.S. 90, 95 (1967); *Serrano v. U.S. Atty. Gen.*, 655 F.3d 1260, 1263 (11th Cir. 2011); *In re BellSouth Corp.*, 334 F.3d 941, 953 (11th Cir. 2003). "Equitable relief, particularly mandamus, does not necessarily follow a finding of a violation: respect for the autonomy and comparative institutional advantage of the executive branch has traditionally made courts slow to assume command over an agency's choice of priorities." *In re Barr Lab'ys, Inc.*, 930 F.2d 72, 74 (D.C. Cir. 1991).

To prevail in a mandamus action, a party must show that: (1) it has a clear and indisputable right to relief; (2) there are no adequate alternative means by which it may obtain that relief; and (3) the grant of mandamus is appropriate under the circumstances. *Cheney*, 542 U.S. at 380-81; *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 35 (1980); *Kerr v. U.S. Dist. Court for the N. Dist. of Cal.*, 426 U.S. 394, 403 (1976). When a plaintiff fails to demonstrate that it has a clear and indisputable right to relief, a court may "begin and end with the first" of the three mandamus

requirements. *In re Trade & Com. Bank*, 890 F.3d 301, 303 (D.C. Cir. 2018) (per curiam).

As to the first element, a plaintiff's right to issuance of a writ of mandamus is clear and indisputable only in "exceptional circumstances amounting to a judicial usurpation of power or a clear abuse of discretion." *Cheney*, 542 U.S. at 380 (internal quotation marks and citations omitted); *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 289 (1988). Where a matter is committed to an agency's discretion and the agency operates within its temporal zone of discretion, it cannot be said that a litigant's right to agency action on plaintiff's desired timetable is "clear and indisputable." *Will v. Calvert Fire Ins. Co.*, 437 U.S. 655, 666 (1978) (plurality opinion).

The central question in evaluating a claim of unreasonable delay is whether "the agency's delay is so egregious as to warrant mandamus." *Martin v. O'Rourke*, 891 F.3d 1338, 1344 (Fed. Cir. 2018) (quoting *Telecomms. Rsch. & Action Ctr. v. FCC*, 750 F.2d 70, 79 (D.C. Cir. 1984)); *see In re Nat. Res. Def. Council, Inc.*, 956 F.3d 1134, 1138 (9th Cir. 2020); *American Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016); *Home Builders Ass'n of Chi. v. U.S. Army Corps of Eng'rs*, 335 F.3d 607, 616 (7th Cir. 2003); *George Kabellar, Inc. v. Busey*, 999 F.2d 1417, 1423 (11th Cir. 1993). One prerequisite to mandamus relief is a demonstration—by the plaintiff—that the agency unreasonably delayed adjudicating plaintiff's case. *See*

*Liberty Fund, Inc. v. Chao*, 394 F. Supp. 2d 105, 114 (D.D.C. 2005) (noting that petitioner must demonstrate an unreasonable delay in order to demonstrate a "clear right to relief" under the Mandamus Act); *Razaq v. Poulos*, No. C06-2461 WDW, 2007 WL 61884, at *5 (N.D. Cal. Jan. 8, 2007) (noting that a complaint seeking the USCIS to decide a petition pending before it will satisfy the requirements for obtaining mandamus where the petitioner demonstrates that the agency has unreasonably delayed). In cases alleging unreasonable delay, courts must be mindful that each "case must be analyzed according to its own unique circumstances." *Air Line Pilots Ass'n v. Civil Aeronautics Bd.*, 750 F.2d 81, 86 (D.C. Cir. 1984).

When addressing a mandamus action that alleges unreasonable delay on the part of a federal agency, courts typically examine the factors—to the extent they are relevant—enunciated in *Telecomms. Research & Action Ctr*, 750 F.2d at 75, the so-called "TRAC factors." "Resolution of a claim of unreasonable delay is ordinarily a complicated and nuanced task requiring consideration of the particular facts and circumstances before the court." *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1100 (D.C. Cir. 2003).

In this case, there are multiple genuine issues of material fact. These include at least the following:

1. When did Plaintiff file *all of the documents* required for adjudication of her Form I-130 petition by the Department of State?

2. Whether the Covid-19 pandemic and efforts taken to ameliorate its effects resulted in the Department of State reasonably delaying a consular interview of Plaintiff's husband?

3. Was the delay suffered by Plaintiff systemic or did the Department of State single out Plaintiff's case for an impermissible reason?[3]

4. In light of the particular circumstances of Plaintiff's case, was the Department of State unreasonable in not scheduling the consular interview and in not adjudicating Plaintiff's Form I-130 petition?

5. Assuming that the Department of State's delay was unreasonable, was it so egregious as to warrant mandamus relief?

At the summary judgment stage, a court cannot weigh the evidence or make credibility determinations. *Anderson*, 477 U.S. at 255. Because there is conflicting evidence—and the undersigned must consider this evidence in the light most favorable to the non-moving party—the undersigned cannot conclude that the Department of State has acted unreasonably in not scheduling a consular interview and not finally adjudicating Plaintiff's Form I-130 petition. The record also does not lead to the indisputable conclusion that any delay was so egregious as to warrant

---

[3] This is a particularly important question because courts should reject mandamus claims that would allow a plaintiff to "jump the line" at the expense of other similarly-situated individuals. *See Mashpee Wampanoag Tribal Council, Inc.*, 336 F.3d at 1100; *In re Barr Lab'ys, Inc.*, 930 F.2d at 76.

mandamus relief. Because the parties have offered conflicting evidence on material issues of fact, Plaintiff has failed to demonstrate that there is no genuine issue of material fact and that she is entitled to judgment as a matter of law.

### IV. Conclusion

For the reasons set forth above, the undersigned respectfully **RECOMMENDS** that Plaintiff's Motion for Summary Judgment (Doc. 14) be **DENIED**.

At Panama City Beach, Florida, this 18th day of August, 2020.

/s/ *Michael J. Frank*
**Michael J. Frank**
**United States Magistrate Judge**

### NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days of the date of this report and recommendation. Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control. An objecting party must serve a copy of its objections upon all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.** *See* **11th Cir. Rule 3-1; 28 U.S.C. § 636.**